UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA

| | |
|---|---|
| UNITED MINERALS & PROPERTIES, INC. DBA CIMBAR PERFORMANCE MINERALS, | Civil Action No.: 4:23-CV-00050-WMR |
| Plaintiff, | Judge William M. Ray II |
| vs. | |
| THE PHOENIX INSURANCE COMPANY, | |
| Defendant. | |

## <u>MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFF'S MOTION FOR JUDGMENT ON THE PLEADINGS</u>

FREEMAN MATHIS & GARY, LLP

Philip W. Savrin (Bar No. 627836)
Rachael Slimmon (Bar No. 831661)
100 Galleria Parkway, Suite 1600
Atlanta, GA 30339
(770) 818-1405
psavrin@fmglaw.com
rslimmon@fmglaw.com

SIMPSON THACHER & BARTLETT LLP

Lynn K. Neuner
Darcy R. Samuelsohn *(pro hac vice forthcoming)*
425 Lexington Avenue
New York, NY 10017
(212) 455-2000
lneuner@stblaw.com
darcy.samuelsohn@stblaw.com

*Attorneys for Defendant The Phoenix Insurance Company*

# **TABLE OF CONTENTS**

**Page**

PRELIMINARY STATEMENT ..................................................................1

FACTUAL BACKGROUND.....................................................................3

    A.    CIMBAR, a Talc Manufacturer, Purchases Insurance From Phoenix that Excludes Coverage for Asbestos-Related Bodily Injuries..................................................................................3

    B.    CIMBAR Is Sued For Bodily Injuries Related to Exposure to Asbestos in its Talc Products .................................................5

    C.    The Current Action.................................................................7

ARGUMENT ...........................................................................................7

II.    LEGAL STANDARD ...................................................................8

III.    PHOENIX IS NOT OBLIGATED TO DEFEND CIMBAR IN THE *ZUNDEL* ACTION BECAUSE THE POLICIES FACIALLY EXCLUDE COVERAGE WITH CLEAR AND UNAMBIGUOUS LANGUAGE ............................................................................9

    A.    The Face of the *Zundel* Complaint Clearly Alleges Asbestos-Related Injuries Outside the Bounds of the Policies..........................10

    B.    The Policies Plainly Exclude Coverage for Claims Arising Out of Exposure to Asbestos, in Whole or in Part .....................................12

IV.    THERE ARE GENUINE ISSUES OF MATERIAL FACT AS TO THE *ZUNDEL* ACTION'S THEORY OF LIABILITY AND THE ASBESTOS EXCLUSIONS .........................................................18

    A.    Genuine Issues of Material Fact Exist as to the Theory of Liability Asserted in the *Zundel* Action ...............................................18

    B.    The Court Should Have a Full Record Regarding the Asbestos Exclusions ..................................................................23

CONCLUSION......................................................................................25

i

# TABLE OF AUTHORITIES

**Cases**

*Am. Empire Surplus Lines Ins. Co. v. Hathaway Dev. Co.*,
   707 S.E. 2d 369 (Ga. 2011) ...................................................................9

*Am. Guar. & Liab. Ins. Co. v. Abram Law Grp., LLC*,
   555 F. App'x 919 (11th Cir. 2014) .......................................................8

*BBL-McCarthy, LLC v. Baldwin Paving Co.*,
   646 S.E. 2d 682 (Ga. Ct. App. 2007)....................................................12

*DC Cap. L. Firm, LLP v. Hanover Ins. Co.*,
   2023 U.S. App. LEXIS 30828 n.2 (11th Cir. Nov. 20, 2023) ...............8

*Ga. Farm Bureau Mut. Ins. v. Smith*,
   784 S.E. 2d 422 (Ga. 2016) .................................................................17

*Hanson v. Colgate-Palmolive Co.*,
   353 F. Supp. 3d 1273 (S.D. Ga. 2018) .................................................15

*Hays v. Ga. Farm Bureau Mut. Ins.*,
   722 S.E. 2d 923 (Ga. Ct. App. 2012)....................................................13

*Hoover v. Maxum Indem. Co.*,
   730 S.E. 2d 413 (Ga. 2012) .................................................................12

*Horsley v. Feldt*,
   304 F.3d 1125 (11th Cir. 2002) .........................................................8, 9

*Houston Specialty Ins. Co. v. Five Paces Inn Co.*,
   823 F. App'x 897 (11th Cir. 2020) .......................................................13

*M. Hawley Ins. Co. v. America's Home Pl., Inc.*, 2:17-CV-00242-RWS,
   2019 U.S. Dist. LEXIS 78839 (N.D. Ga. March 19, 2019) ........... 19, 25

*N. Ga. Petroleum Co. v. Federated Mut. Ins. Co.*,
   68 F.Supp. 2d 1321 (N.D. Ga. 1999)....................................................13

*Old Republic Union Ins. Co. v. Floyd Beasley & Sons, Inc.*,
   551 S.E. 2d 388 (Ga. Ct. App. 2001)....................................................................9

*Palmer & Cay, Inc. v. Marsh & McLennan Cos., Inc.*,
   404 F.3d 1297 (11th Cir. 2005) ..........................................................................8

*Parker v. DeKalb Chrysler Plymouth*,
   459 F. Supp. 184 (N.D. Ga. 1978),
   *aff'd*, 673 F.2d 1178 (11th Cir. 1982) ..........................................................9, 18

*Payne v. Twiggs Cnty. Sch. Dist.*,
   496 S.E. 2d 690 (Ga. 1998) ..............................................................................17

*Penn-Am. Ins. Co. v. Disabled Am. Veterans, Inc.*,
   490 S.E. 2d 374 (Ga. 1997) ................................................................................9

*Scottsdale Ins. Co. v. Skin's Fam. Auto Serv., LLC*,
   2023 U.S. Dist. LEXIS 216398 (M.D. Ga. Dec. 5, 2023)..................................24

*Slagle v. ITT Hartford*,
   102 F.3d 494 (11th Cir. 1996) ..........................................................................19

*Stanton v. Larsh*,
   239 F.2d 104 (5th Cir. 1956) .............................................................................24

*Taylor Morrison Servs., Inc. v. HDI-Gerling Am. Ins. Co.*,
   746 S.E. 2d 587 (Ga. 2013) ..............................................................................14

*Truitt Oil & Gas Co. v. Ranger Ins. Co.*,
   498 S.E. 2d 572 (Ga. Ct. App. 1998)................................................................13

*United States Liab. Ins. Co. v. Jenkins*,
   2015 U.S. Dist. LEXIS 77477 (M.D. Ga. June 16, 2015)..................................18

*Waite v. All Acquisition Corp.*,
   901 F.3d 1307 (11th Cir. 2018) ........................................................................10

**Rules**

Federal Rule of Civil Procedure 12(c)....................................................................1

Defendant The Phoenix Insurance Company ("Phoenix") respectfully submits this memorandum of law in opposition to Plaintiff United Minerals & Properties, Inc. d/b/a CIMBAR Performance Minerals, Inc.'s ("CIMBAR") motion for judgment on the pleadings, pursuant to Federal Rule of Civil Procedure 12(c). CIMBAR's motion must be denied because Phoenix has no duty to defend CIMBAR in the underlying action (the "*Zundel* Action") as a matter of law, and genuine issues of material remain, which makes judgment at this stage procedurally improper.

## PRELIMINARY STATEMENT

Judgment on the pleadings is not warranted in this case, and CIMBAR's motion must be denied on two independent bases.  First, as a matter of law, CIMBAR's interpretation of the meaning of the relevant insurance policies is wrong and inconsistent with bedrock Georgia insurance principles.  On a duty to defend analysis, the question is whether the allegations within the four corners of the underlying complaint come within the four corners of the insurance policy or if they are facially excluded by the policy terms.  This case is patently the latter.  The underlying *Zundel* Action plainly asserts bodily injuries that arose out of alleged exposure to asbestos-containing talc during a medical procedure.  Indeed, the underlying plaintiff alleges he developed malignant pleural mesothelioma – a disease for which the only known environmental cause is asbestos exposure.  Due to

1

the nature of CIMBAR's business (the mining and manufacture of talc products), the policies themselves explicitly and unambiguously exclude coverage for injuries allegedly arising out of asbestos exposure (*i.e.*, mesothelioma) where those injuries were caused, wholly or in part, by the properties of asbestos that make it toxic to humans. CIMBAR's reading of the underlying complaint and policy language is unreasonable and its attempt to transform the plain meaning of both documents into a coverable claim turns Georgia law on its head.

Second, there are genuine issues of material fact that must be resolved before judgment can be rendered in this case. Specifically, CIMBAR has sponsored a fanciful interpretation of the policies that is at odds with agreeing to purchase coverage with an asbestos exclusion. The very first policy that CIMBAR references from 2013 makes clear on the Declarations page that "This Policy Does Not Cover Liability Arising Out of Asbestos Material." Phoenix is entitled to take discovery from CIMBAR and its insurance broker about the scope of coverage CIMBAR sought and purchased, and fully expects that these underwriting materials will demonstrate that CIMBAR knew that it was not receiving any coverage for asbestos-related injuries – much less automatic advancement of defense costs for any complaint that alleged asbestos-related bodily injury, as CIMBAR contends here.

In addition, the parties dispute the basis and theory of liability for the underlying lawsuit. CIMBAR twists the language of the underlying complaint to argue the underlying plaintiffs assert a novel theory related to non-asbestiform talc. However, this position is belied by the litigation record to date in the *Zundel* Action. The facts and evidence in the *Zundel* Action clearly demonstrate that the theory of liability is, and always has been, that the talc CIMBAR sourced from particular mines in a region of China was contaminated with the asbestos fibers that caused Mr. Zundel to develop malignant pleural mesothelioma. This case requires discovery for Phoenix to obtain evidence regarding these fundamental factual disputes.

## FACTUAL BACKGROUND

### A. CIMBAR, a Talc Manufacturer, Purchases Insurance From Phoenix that Excludes Coverage for Asbestos-Related Bodily Injuries

Plaintiff CIMBAR, a manufacturer of, among other products, talc, expressly alleges that its product can be used to treat excess fluid in the lungs through a procedure known as talc pleurodesis. (*See* Doc. 3 at ¶¶ 9, 13.) CIMBAR purchased nine commercial general liability insurance policies relevant to this action from Phoenix, each of which span a one-year period covering August 1, 2013 through August 1, 2022 (each a "Policy," and collectively, the "Policies"). (*Id.* at ¶ 17.) CIMBAR specifically alleges, and Phoenix does not deny, that the Policies expressly

exclude from coverage, injuries or damage "arising out of the actual or alleged presence" of asbestos, if "caused or contributed to by the hazardous properties of asbestos." (*Id*. at ¶¶ 26–27; Doc. 31 at ¶¶ 26–27.)

The Policies, spanning the period of August 1, 2013 through August 1, 2019, include the following clearly labeled exclusion:

**EXCLUSION – ASBESTOS**

This insurance does not apply to "bodily injury," "property damage," "personal injury" or "advertising injury" ***arising out of the actual or alleged presence or actual, alleged or threatened dispersal of asbestos, asbestos fibers or products containing asbestos***, provided that the injury or damage is caused or contributed to by the hazardous properties of asbestos. This includes:

a.   Any supervision, instructions, recommendations, warnings or advice given or which should have been given in connection with the above; and

b.   Any obligation to share damages with or repay someone else who must pay damages because of such injury or damage.

(Doc 3 at ¶ 26 (emphasis added).) The Policies spanning the period of August 1, 2019 through August 1, 2022 include the following, substantially similar, exclusion, which is identical in relevant part:

This insurance does not apply to: . . .

s.   Asbestos

(1) "Bodily injury" or "property damage" ***arising out of the actual or alleged presence or actual, alleged or threatened***

4

> ***dispersal of asbestos, asbestos fibers or products containing
> asbestos***, provided that the "bodily injury" or "property damage"
> is caused or contributed to by the hazardous properties of
> asbestos.
>
> (2) "Bodily injury" or "property damage" arising out of the actual
> or alleged presence or actual, alleged or threatened dispersal of
> any solid, liquid, gaseous or thermal irritant or contaminant,
> including smoke, vapors, soot, fumes, acids, alkalis, chemicals
> and waste, and that are part of any claim or "suit" which also
> alleges any "bodily injury" or "property damage" described in
> Paragraph (1) above.

(collectively, the "Asbestos Exclusions"). (*Id.* at ¶ 27 (emphasis added).)

## B. CIMBAR Is Sued For Bodily Injuries Related to Exposure to Asbestos in its Talc Products

On May 10, 2022, Bryce and Diane Zundel filed suit against CIMBAR,
among others, in the Superior Court of Massachusetts alleging "that a CIMBAR
product was used in a medical procedure called talc pleurodesis, undergone by [Mr.
Zundel] in the Underlying lawsuit twice." (*Id.* ¶¶ 8–9; *see generally*, Doc. 3-1.)  This
procedure involved administering talc products intrapleurally to Mr. Zundel's left
lung.  (Doc. 3-1 at ¶ 14.)  CIMBAR alleges that, as a result of exposure to its talc
product in both 2014 and 2020, the Zundels claim Mr. Zundel was diagnosed with
malignant pleural mesothelioma in September of 2021.  (Doc. 3 at ¶¶ 9–10.)  Mr.
Zundel's physician diagnosed him with malignant pleural mesothelioma in the same
lung that was exposed to CIMBAR's talc product.  (Doc 3-1 at ¶ 14.)  His physicians

observed "talc aggregations covering most of the lower lobe surface as well as the posterior parietal pleura, diaphragmatic surface and pericardial surfaces." (*Id*.)

The *Zundel* Action, brought against CIMBAR and others, asserts that the cause of Mr. Zundel's "asbestos-related injury" is the presence of asbestos in the CIMBAR-manufactured talc product used during his medical procedures. (*Id*. at ¶¶ 11–16.) The Zundels expressly claim that "[a]s a direct and proximate result of [Mr. Zundel's] exposures," he "developed malignant pleural mesothelioma, ***an asbestos-related injury***." (*Id*. at ¶ 16 (emphasis added).) The *Zundel* complaint clearly states that the definition of "asbestos," "shall be interpreted, not in a limited regulatory sense, but ***broadly***." (*Id*. at ¶ 2A n.1 (emphasis added).) The Zundels clarify that "asbestos" specifically pertains to "tremolite, anthophyllite, and chrysotile" fibers. (*Id*. at ¶ 52(g).) "Because [CIMBAR's products] contained asbestos," the *Zundel* complaint alleges that Mr. Zundel "was exposed to and did inhale and/or ingest asbestos and talc dust, fibers, and particles." (*Id*. at ¶¶ 15, 35.) Indeed, CIMBAR acknowledges that the *Zundel* Action alleges asbestos-related injuries, at least in part, stating that the Zundels allege it is liable for the injuries Mr. Zundel suffered by exposure to CIMBAR's talc product, which contained "asbestos as defined in a regulatory sense." (Doc. 3 at ¶ 14.)

### C. The Current Action

CIMBAR tendered the *Zundel* Action to Phoenix and requested Phoenix assume its defense and provide indemnity for the suit on the basis that its "talc product does not contain asbestos, as confirmed by independent laboratory testing." (Doc. 3 at ¶¶ 11, 21–23.)  Phoenix denied coverage for the *Zundel* Action after reviewing the Policies because the facts alleged on the face of the *Zundel* Complaint fell squarely under the Asbestos Exclusions.  (*See* Doc. 3 at ¶ 24.)

On March 24, 2023, CIMBAR initiated this action to determine Phoenix's obligation to defend the *Zundel* Action.  (Doc. 1.)  On March 29, 2023, CIMBAR filed its First Amended Complaint for Breach of Contract and Declaratory Relief (the "Complaint"), which remains the operative complaint. (Doc. 3.)  On September 7, 2023, the Court denied Phoenix's motion to dismiss the Complaint.  (Doc. 28.)  In its opinion, filed on October 26, 2023, the Court held that the Asbestos Exclusions imply "that the asbestos must be present for the exclusion to apply." (*Id*. at 5.)  The Court granted CIMBAR's motion to reopen discovery and for leave to file the present motion.  (Docs. 43, 44.)

### ARGUMENT

CIMBAR's motion must be denied for two reasons.  First, Phoenix clearly has no duty to defend CIMBAR for the *Zundel* Action.  The four corners of the Policies

and the face of the *Zundel* Complaint indicate that CIMBAR's interpretation of the Policies is unreasonable and, as a matter of law, the factual allegations in the *Zundel* Action are beyond the bounds of the Policies. Second, genuine issues of material fact exist related to the Zundels' theory of liability and the Asbestos Exclusions. The extensive facts and evidence entered in the *Zundel* Action demonstrate that the Asbestos Exclusions exclude exactly the type of case the Zundels have filed and litigated, namely one asserting bodily injury based on alleged exposure to the hazardous properties of asbestos. Phoenix also seeks discovery from CIMBAR and its broker to demonstrate that they fully understood that CIMBAR was purchasing coverage with an exclusion for any liabilities arising out of asbestos material.

## II.   LEGAL STANDARD

A motion for judgment on the pleadings pursuant to Federal Rule 12(c) may be granted only where there are no material facts in dispute. *Palmer & Cay, Inc. v. Marsh & McLennan Cos., Inc.,* 404 F.3d 1297, 1303 (11th Cir. 2005); *DC Cap. L. Firm, LLP v. Hanover Ins. Co.*, 2023 U.S. App. LEXIS 30828, at *3 n.2 (11th Cir. Nov. 20, 2023) (affirming the grant of an insurer's motion for judgment on the pleadings and finding no duty to defend). Facts must be viewed in the light most favorable to Phoenix, as the non-moving party. *See Am. Guar. & Liab. Ins. Co. v. Abram Law Grp., LLC*, 555 F. App'x 919, 920 n.1 (11th Cir. 2014) (quoting *Horsley*

*v. Feldt*, 304 F.3d 1125, 1131 (11th Cir. 2002)).  Where, as here, the plaintiff moves for judgment on the pleadings, facts alleged in the answer are taken as true, but facts alleged in the complaint are taken as true "***only*** where and to the extent that they do not conflict with those of the answer." *Parker v. DeKalb Chrysler Plymouth*, 459 F. Supp. 184, 187 (N.D. Ga. 1978), *aff'd*, 673 F.2d 1178 (11th Cir. 1982).  CIMBAR's motion must be denied because Phoenix's Answer raises issues of fact "which if proved would defeat recovery." *Id.* (citation omitted).

## III. PHOENIX IS NOT OBLIGATED TO DEFEND CIMBAR IN THE *ZUNDEL* ACTION BECAUSE THE POLICIES FACIALLY EXCLUDE COVERAGE WITH CLEAR AND UNAMBIGUOUS LANGUAGE

Under Georgia law, insurance policies are viewed as contracts; terms of insurance policies, therefore, must be construed as any other type of contract. *Am. Empire Surplus Lines Ins. Co. v. Hathaway Dev. Co.*, 707 S.E. 2d 369, 371 (Ga. 2011); *Old Republic Union Ins. Co. v. Floyd Beasley & Sons, Inc.*, 551 S.E. 2d 388, 390 (Ga. Ct. App. 2001).  The duty to defend arises only when the underlying lawsuit alleges liability potentially within the policy's coverage.  *Penn-Am. Ins. Co. v. Disabled Am. Veterans, Inc.*, 490 S.E. 2d 374, 376 (Ga. 1997).  Here, the plain and unambiguous terms of the Policies clearly exclude coverage for the *Zundel* Action, and therefore, Phoenix has no duty to defend CIMBAR.

### A. The Face of the *Zundel* Complaint Clearly Alleges Asbestos-Related Injuries Outside the Bounds of the Policies

Read in its entirety, the *Zundel* complaint leaves no ambiguity that the Zundels assert ***only asbestos-related injuries***.  The crux of the Zundels' allegations is that Mr. Zundel "inhaled, ingested, or otherwise absorbed asbestos fibers, an inherently dangerous toxic substance . . ." and "[a]s a direct and proximate result of [Mr. Zundel's] exposure . . . [he] developed malignant pleural mesothelioma, an asbestos-related injury."  (Doc 3-1 at ¶¶ 14–15.)  Indeed, there is no other potential source of Mr. Zundel's injuries than asbestos because malignant mesothelioma is "a rare, fatal cancer, ***the only known environmental cause of which is exposure to asbestos***." *See Waite v. All Acquisition Corp.*, 901 F.3d 1307, 1311 (11th Cir. 2018) (emphasis added).

There is extensive textual support evidencing that the Zundels' theory of the case arises wholly out of asbestos exposure and asbestos exposure alone. Importantly, the Zundels expressly identify CIMBAR as a "supplier, designer, miner, miller, processer, packager, tester, marketer, manufacturer, and distributor ***of asbestos-containing talc***."  (Doc. 3-1 at ¶ 2C (emphasis added).)  The complaint further asserts that CIMBAR, in its capacity as a supplier, manufacturer, and distributor, of the alleged asbestos-containing talc, placed the products that Mr. Zundel was allegedly exposed to into the stream of commerce.  (*Id*. at ¶ 15.)  With

10

respect to Mr. Zundel's discovery of his injury, the complaint details that Mr. Zundel's "physicians observed 'talc aggregations covering most of the lower lobe surface as well as the posterior parietal pleura, diaphragmatic surface and pericardial surfaces' of his left lung" where the procedure took place.  (*See id.* at ¶ 14.)

Despite CIMBAR's attempts to turn the language of the *Zundel* complaint on its head, footnote one (1) does not alter the substance of the Zundels' allegations whatsoever.  The footnote defines asbestos to include "non-regulated and non-commercial forms of asbestos," and states that "'asbestos' also includes talc, whether or not known or acknowledged by defendant(s) to contain asbestiform minerals or other elongate mineral particles."  (*Id.* at ¶ 2A n.1.)

The allegations made in the *Zundel* complaint clearly show that the Zundels did not attempt to assert a novel theory that mesothelioma can be caused by substances other than asbestos.  Rather, the purpose of this definition is quite plain: to "***broadly***" include all forms of asbestos, as opposed to construing the term "asbestos" in the "limited regulatory sense."  (*Id.* (citation omitted).)  Indeed, the Zundels expressly allege later in the complaint that studies show that talc "contain[s] minor amounts of ***tremolite, anthophyllite, and chrysotile*** as these are often present in fibrous talc mineral deposits."  (*Id*. at ¶ 52(g) (emphasis added).)  The commonly understood definition of asbestos is several hydrated silicate fibers including

11

actinolite, anthophyllite, chrysotile, crocidolite amosite, or tremolite. *See* Metal and Nonmental Health Inspection Procedures, MSHA – Handbook Series – PH06-IV-1(1), 8-1 (2006). Moreover, the Zundels' allegations unambiguously allege that CIMBAR's talc contained tremolite, anthophyllite, and chrysotile asbestos fibers, which caused Mr. Zundel's mesothelioma diagnosis.

As discussed, the duty to defend legal framework limits the scope of the Court's analysis to the four corners of the underlying complaint and the four corners of the Policies. *See Hoover v. Maxum Indem. Co.*, 730 S.E. 2d 413, 418 (Ga. 2012). Here, there is simply no plausible argument that the core of the *Zundel* Action relates to anything but ***asbestos exposure*** – a fact CIMBAR itself knew at the time the lawsuit was filed and sought immediate third-party lab testing to support its argument that its talc product does not contain asbestos. (Doc. 3 at ¶ 11.)

**B. The Policies Plainly Exclude Coverage for Claims Arising Out of Exposure to Asbestos, in Whole or in Part**

Where the allegations of an underlying complaint unambiguously exclude coverage, there can be no duty to defend. *BBL-McCarthy, LLC v. Baldwin Paving Co.*, 646 S.E. 2d 682, 685 (Ga. Ct. App. 2007). Such is the case here. Georgia law is clear that on a duty to defend, courts must only compare an insurance policy's provisions directly to the claims asserted against the insured. *Id*. A fair and full reading of the Policies and the face of the *Zundel* complaint leave only one

12

reasonable conclusion: the *Zundel* Action is not a covered claim because it asserts a theory of bodily injury caused or contributed by CIMBAR's asbestos-containing talc. To find otherwise requires turning Georgia law on its head by substituting the standard for the duty to indemnify for the duty to defend and ignoring the Zundels' clearly articulated theory of liability against CIMBAR.

### 1. Under Georgia Law's "But For" Test, the Policies Exclude Coverage for the *Zundel* Action

An insurance policy is ambiguous only where it is so unclear that "an average person could not make out the boundaries of coverage[.]" *N. Ga. Petroleum Co. v. Federated Mut. Ins. Co.*, 68 F. Supp. 2d 1321, 1325–27 (N.D. Ga. 1999); *see also Truitt Oil & Gas Co. v. Ranger Ins. Co.*, 498 S.E. 2d 572, 574 (Ga. Ct. App. 1998). In Georgia, the particular language used in the Asbestos Exclusions has been repeatedly construed by courts. The inclusion of the phrase "arising out of," under Georgia's rules of construction, triggers a "but for" test. *See Houston Spec. Ins. Co. v. Five Paces Inn Co.*, 823 F. App'x 897, 899 (11th Cir. 2020); *Hays v. Ga. Farm Bur. Mut. Ins.*, 722 S.E. 2d 923, 927 (Ga. Ct. App. 2012). Therefore, the inquiry is whether the *Zundel* Action would have arisen ***but for*** the "actual or alleged presence" of asbestos.

There is no reasonable basis to dispute that the answer to this question is resoundingly no, based on the four corners of the complaint. The contractual

language in the Policies is unambiguous and explicit in creating a boundary indicating there is no coverage for injuries "***arising out of*** the actual or alleged presence . . . of asbestos, asbestos fibers, or products containing asbestos, provided that the 'bodily injury' or 'property damage' is caused or contributed to by the hazardous properties of asbestos." (Doc. 3 at ¶¶ 26–27 (emphasis added).) The *Zundel* complaint specifically alleges that, after Mr. Zundel "was wrongfully exposed to Defendants' Products and inhaled, ingested, or otherwise absorbed asbestos fibers, an inherently dangerous toxic substance," he was diagnosed with malignant pleural mesothelioma, "***an asbestos-related injury***," as a direct and proximate result of the exposure. (Doc. 3-1 at ¶¶ 14, 16 (emphasis added).) Put another way, in the absence of Mr. Zundel's exposure to CIMBAR's asbestos-containing talc-product, he would not have developed mesothelioma.

## 2. The Usual and Common Meaning of "Asbestos" Encompasses the "Asbestos" Alleged in the *Zundel* Action

Where terms in an insurance policy are undefined, Georgia law requires that courts construe them based on their "usual and common meaning." *See Taylor Morrison Servs., Inc. v. HDI-Gerling Am. Ins. Co.*, 746 S.E. 2d 587, 590 (Ga. 2013). Courts may turn to various sources to determine what constitutes a term's usual and common meaning. *See id.* (looking to Black's Law Dictionary and case law to define "accident"). Courts in the Eleventh Circuit, specifically, have relied on regulatory

authority for the definition of asbestos. *See Hanson v. Colgate-Palmolive Co.*, 353 F. Supp. 3d 1273, 1278 (S.D. Ga. 2018) (noting "Asbestiform" and "non-asbestiform" are mineralogical terms that refer to how a particular mineral grows or crystallizes) (citing Occupational Exposure to Asbestos, Tremolite, Anthophyllite, and Actinolite, 57 Fed. Reg. 24310-01, 24316 (June 8, 1992)).

In this case, regulatory authority and industry usage, medical and dictionary definitions of asbestos, all provide a common understanding of the word "asbestos:"

- U.S. Department of Labor's Mine Safety and Health Administration Handbook's definition of asbestos: the generic term for several hydrated silicates that separate into flexible fibers, including actinolite, anthophyllite, chrysotile, crocidolite amosite, or tremolite. *See* Metal and Nonmental Health Inspection Procedures, MSHA – Handbook Series – PH06-IV-1(1), 8-1 (2006).

- Merriam-Webster's definition of asbestos: any of several minerals (such as chrysotile) that readily separate into long flexible fibers, that cause asbestosis and have been implicated as causes of certain cancers. *See* Merriam-Webster, https://www.merriam-webster.com/dictionary/asbestos (last visited Apr. 26, 2024).

- National Cancer Institute at the National Institutes of Health definition of asbestos: a group of minerals that take the form of tiny fibers that, when breathed into the lungs can cause several serious diseases, including lung cancer and ***malignant mesothelioma***. *See* Nat'l Cancer Inst. At the Nat'l Insts. Of Health, https://www.cancer.gov/publications/dictionaries/cancer-terms/def/asbestos (last visited Apr. 26, 2024) (emphasis added).

The *Zundel* complaint uses the term "asbestos" in the same commonly understood fashion. (*See* Doc. 3-1 at ¶¶ 2C, 14, 35, 52(g).)

### 3. The Asbestos Exclusions Require Only that Injuries Are "Caused or Contributed" to by the Properties of Asbestos Which Make it Hazardous

The closing language of the Asbestos Exclusions reinforces that there is no coverage for an underlying lawsuit that raises any allegations of asbestos exposure, and does not alter the outcome of the duty to defend analysis.  The language provides that coverage for actual or alleged asbestos exposure is excluded, "provided that the 'bodily injury' or 'property damage' is caused or contributed to by the hazardous properties of asbestos."  (Doc. 3 at ¶¶ 26–27.)  This language highlights that the injuries or damages must be allegedly caused or contributed to by the properties of asbestos that make it toxic to humans and can cause severe health conditions – such as mesothelioma.  Injuries tangentially involving asbestos, that are wholly unrelated to the fact that asbestos can cause severe medical conditions, would therefore not fall under the scope of the Asbestos Exclusions.  For example, if a person was injured when a palette of asbestos-containing roofing shingles crushed their foot, the Asbestos Exclusions cannot be used to deny coverage for that claimed injury.  Conversely, the *Zundel* Action, which expressly claims that Mr. Zundel "inhaled, ingested, or otherwise absorbed asbestos fibers, ***an inherently dangerous toxic substance*** . . ." and "[a]s a direct and proximate result. . . [Mr. Zundel] developed

malignant pleural mesothelioma, an asbestos-related injury," fall squarely within the Asbestos Exclusions' purview.  (Doc 3-1 at ¶¶ 14–15 (emphasis added).)

The *Zundel* complaint's reference to non-asbestiform minerals does not transform the action into a covered claim.  CIMBAR's claim remains outside the bounds of the Policies because the Asbestos Exclusions exclude coverage for injuries and damage if they arose out of exposure to asbestos, ***whether in whole or in part***.  Where the injury is ***alleged*** to have been "caused" ***or*** "contributed to" by asbestos, it remains excluded from coverage under the Policies.  Here, the Zundels' plainly argue that asbestos – using the commonly understood meaning – is in the talc CIMBAR mined that was ultimately used in Mr. Zundel's medical procedures and caused his mesothelioma.  There is no way for CIMBAR to escape the central point that asbestos, at a minimum, allegedly ***contributed*** to Mr. Zundel's bodily injury.

The Asbestos Exclusions show that Phoenix expressly excluded coverage for all liabilities associated with exposure to the hazardous properties of asbestos, which is clearly within its power to do.  *Ga. Farm Bureau Mut. Ins. v. Smith,* 784 S.E. 2d 422, 424 (Ga. 2016) (quoting *Payne v. Twiggs Cnty. Sch. Dist.*, 496 S.E. 2d 690, 691 (Ga. 1998) (an insurer is permitted to draft policies "as it sees fit, so long as they are not contrary to the law").  The Asbestos Exclusions are tailored to apply precisely to facts such as the *Zundel* Action.  Thus, based on bedrock

principles of Georgia insurance law, Phoenix is under no duty to defend the *Zundel*

Action and CIMBAR's motion for judgment should be denied.

## IV.   THERE ARE GENUINE ISSUES OF MATERIAL FACT AS TO THE *ZUNDEL* ACTION'S THEORY OF LIABILITY AND THE ASBESTOS EXCLUSIONS

Judgment on the pleadings is procedurally improper because there are genuine

issues of material fact outstanding that must be addressed with discovery before final

judgment is rendered in this case.   Specifically, the parties dispute the Zundels'

theory of liability and the applicability of the Asbestos Exclusions.   Resolution of

these issues requires a full factual record.   For purposes of this motion, Phoenix's

positions in its Answer must be taken as true, so Judgment cannot possibly be

rendered against it as a matter of law.   *See Parker*, 459 F. Supp. at 187.

### A. Genuine Issues of Material Fact Exist as to the Theory of Liability Asserted in the *Zundel* Action

Where there is a dispute regarding the legal and factual issues for an

underlying complaint, a motion for judgment on the pleadings must be denied.   *See*

*United States Liab. Ins. Co. v. Jenkins*, No. 7:13-CV-164 HL, 2015 U.S. Dist. LEXIS

77477, at *5–6 (M.D. Ga. June 16, 2015) (denying in part a motion for judgment on

the pleadings where the parties disputed the underlying theory of liability asserted,

noting the movant "misstates the issue and ignores [] both the legal and factual

foundation for" the underlying lawsuit).   In addition, this Court has ruled that

potentially influential documents can be sufficient to preclude granting relief based solely on the pleadings where they raise uncertainties relevant to the action.  *See Mt. Hawley Ins. Co. v. America's Home Pl., Inc.*, 2:17-CV-00242-RWS, 2019 U.S. Dist. LEXIS 78839, at \*6–7 (N.D. Ga. March 19, 2019) (denying "declaratory relief on the pleadings without considering a potentially influential document") (citing *Slagle v. ITT Hartford*, 102 F.3d 494, 497 (11th Cir. 1996)).

In its complaint, CIMBAR argues that, based on footnote one (1) of the Zundels' complaint, the Zundels allege a novel theory that non-asbestiform talc can cause malignant pleural mesothelioma.  (*See* Doc. 3 at ¶ 28.)  Phoenix denies this allegation, and has asserted since the outset that the Zundels' complaint reveals a case theory rooted in asbestos and asbestos alone.  (*See* Doc. 31 at ¶ 28.)  Since the time the Court issued its decision on Phoenix's motion to dismiss, the underlying *Zundel* Action has materially advanced, and the Zundels have put forward key evidence and arguments clarifying the basis for their causes of action as to CIMBAR. As a result, Phoenix is entitled to make a full fact submission to demonstrate that the Zundels' theory of liability *is and has always been* that CIMBAR's products contained asbestos that caused Mr. Zundel's mesothelioma.

The parties in the *Zundel* Action have completed fact and expert discovery, motions for summary judgment are currently pending before the court, and a trial

date may be set for as early as this summer.  The facts and evidence submitted to date makes crystal clear the Zundels' theory of liability: CIMBAR's talc contains asbestos, and exposure to this asbestos-containing talc caused Mr. Zundel to develop malignant pleural mesothelioma diagnosis.  *See* Doc. 36-1 at 1 (Zundels' describing their case as "alleging that Mr. Zundel's mesothelioma was caused by exposure to asbestos-containing talc products . . . during pleurodesis procedures," and "Cimbar manufactured and supplied the talc that was incorporated into the pleurodesis . . . .").

The Zundels' opposition to CIMBAR's motion for summary judgment focused on three key points related to CIMBAR's liability for Mr. Zundel's asbestos exposure: (i) CIMBAR's ignorance as to safe level of asbestos in talc; (ii) CIMBAR's defective talc testing program was unable to detect asbestos in its talc; and (iii) CIMBAR's talc did in fact contain material amounts of asbestos fibers that were a substantial contributing factor to his mesothelioma diagnosis.

*First*, the Zundels presented testimony from a CIMBAR employee[1] that all talc products that could have been used during Mr. Zundel's pleurodesis procedure were processed from talc ore designated as "H2," and mined in Guangxi, China by

---

[1]  CIMBAR's Chief Operating Officer, Albert Wilson, served as the company's corporate representative witness and provided substantial testimony regarding CIMBAR's talc manufacturing business and testing procedures.  (*See id*. at ¶¶ 70–75.)

Guangxi Longsheng Huamei Talc Development Co, LTD. (*See id*. at ¶¶ 78–79.) CIMBAR's witness confirmed that CIMBAR was aware that asbestos was a potential contaminant in talc and knew that asbestos was a human carcinogen. (*See id*. at ¶¶ 80–86.) Nonetheless, the employee testified that CIMBAR was not aware, and had not looked into the amount of asbestos that constitutes unsafe levels in talc products. (*See id*. at ¶¶ 92–93.)

*Second*, the Zundels presented extensive lay and expert testimony indicating that CIMBAR's talc testing procedures are insufficient to detect asbestos in talc. CIMBAR's talc testing procedure consists of two steps: x-ray diffraction done in Guangxi, China, by a laboratory hired by the mining company, and polarized light microscopy done once the shipment arrives in the United States by laboratories hired by CIMBAR. (*See id*. at ¶¶ 120, 132, 137, 140.) Testimony indicated that in both phases insufficient amounts of talc ore were sampled for testing and the testing procedures were not reliably adhered to. (*See id*. at ¶¶ 123–25, 137, 140.) The Zundels' materials science and talc analysis expert, William E. Longo, Ph.D., submitted a lengthy affidavit opining that both procedures CIMBAR employed to test its talc for asbestos during the relevant period were unlikely to reliably detect asbestos fibers. (*See id*. at ¶¶ 167–69, 175.) Dr. Longo pointed to FDA and other talc industry expert guidance indicating that x-ray diffraction is an outdated form of

asbestos analysis that "can lead to false-negative results, which could allow talc samples with asbestos contamination to pass" scrutiny.  (*See id*. at ¶¶ 168 – 69.)  He opined that this method, as well as the polarized light microscopy method, may fail to detect low levels of asbestos present in talc and were not calibrated to detect certain types of asbestos fibers, such as amphibole.  (*See id*. at ¶¶ 175, 179.)  Dr. Longo concludes that the analytical methods CIMBAR employed were insufficient to detect trace levels of asbestos because they were "designed to detect commercially processed asbestos in items like floor tiles . . . not naturally occurring asbestos on air filters or in soil samples."  (*See id*. at ¶¶ 181–82.)

*Third*, using reliable, EPA-developed protocols for testing asbestos samples, Dr. Longo confirmed that a sample of CIMBAR's H2 talc ore sourced from Guangxi, China contained chrysotile and tremolite asbestos fibers.  (*See id*. at ¶¶ 183–85.)  The sample tested revealed 37,000 bundles of chrysotile asbestos per gram, and 104,000 tremolite asbestos fibers/bundles per gram, which is the equivalent of approximately 705,000 chrysotile/tremolite fibers/bundles in one five-gram Sterile Talc Powder bottle.  (*Id*. at ¶ 185.)  This indicates that Mr. Zundel, whose pleurodesis procedure involved 2 vials (10 grams) of Sterile Talc Powder, was exposed to approximately 1.41 million asbestos fibers/bundles.  (*Id*.)  The Zundels contend that not only was there asbestos in CIMBAR's talc product, but

also Dr. Longo reviewed dozens of prior analyses of talc sourced from the same mining region CIMBAR used in Guangxi, China, and all but two detected measurable asbestos.  (*See id*. at ¶¶ 186–88.)  Dr. Longo concluded that it is not a question of if talc products sourced from this region in China contain asbestos fibers, but if the detection procedures employed are calibrated to find it.  (*See id*. at ¶ 189.)

The facts and evidence in the underlying *Zundel* Action make plain that this case involves exactly the type of lawsuit that the parties agreed would be outside the Policies coverage.  Phoenix is entitled to engage in discovery and put on a full fact presentation regarding the scope of the Policies and the Zundels' theory of liability, which is clearly focused on the commonly understood meaning of asbestos present in CIMBAR's products.  Given that Phoenix's Answer must be taken as true, and all facts must be read in Phoenix's favor, it would be procedurally improper to render judgment in CIMBAR's favor.  From Phoenix's perspective, the *Zundel* Action is a clearly excluded asbestos-based bodily injury suit and CIMBAR agreed there would be no coverage for such claims.

## B. The Court Should Have a Full Record Regarding the Asbestos Exclusions

A motion for judgment on the pleadings must be denied "[i]f a comparison of the competing pleadings reveals a material dispute of facts[.]"  *Scottsdale Ins. Co. v. Skin's Fam. Auto Serv., LLC*, 2023 U.S. Dist. LEXIS 216398, at *4 (M.D. Ga. Dec.

5, 2023) (citation omitted).  CIMBAR argues in its complaint that the Policies cannot be read to exclude coverage for the *Zundel* Action.  (*See* Doc. 3 at ¶ 31.)  Phoenix denies this allegation and contends that the plain meaning of the Policies facially exclude coverage.  (*See* Doc. 31 at ¶ 31.)  Phoenix is entitled to take discovery of CIMBAR, its personnel involved in the procurement and negotiation of the Policy terms, and the broker engaged to obtain the Policies.  Phoenix expects that the documents and testimony will demonstrate that CIMBAR knew it was purchasing coverage with an exclusion for asbestos related matters and that this exclusion was taken into account in CIMBAR's overall risk profile.  By way of example, the very first page of the initial Policy at issue in this action dated August 1, 2013 states on the declarations page: "This Policy Does Not Cover Liability Arising Out of Asbestos Material."  (Doc. 11-2 at 3.)  This statement made it patently clear that the parties agreed to exclude coverage for any and all claims alleging injuries related to asbestos – not a hypothetical subset of claims in which it is proven at the outset that CIMBAR's talc contained asbestos.

Finally, CIMBAR's complaint states that its "talc product does not contain asbestos, as confirmed by independent laboratory testing," and references "third-party analysis of every lot and/or shipment of talc" from 2008 to present.  (Doc. 3 at ¶ 11.)  Under the Court's construction of the Asbestos Exclusions – which Phoenix

does not endorse – Phoenix's duty to defend hinges on the presence, or lack thereof, of asbestos in CIMBAR's talc.  However, CIMBAR has not provided this testing and analysis it relies on.  Such discovery is especially relevant given the crux of the Zundels' theory of liability is based on CIMBAR's ignorance as to what constitutes safe levels of asbestos in talc and that it failed to properly test its talc for asbestos.

Accordingly, Phoenix is entitled to discovery on the authenticity, accuracy, and results of this testing before judgment is rendered because the presence of asbestos in CIMBAR's talc is a genuine issue of material fact.  As a result, Phoenix disputes the allegation that CIMBAR believed it was entitled to coverage for cases such as the *Zundel* Action.  Moreover, CIMBAR has in its possession "potentially influential document[s]" that go to the core of this case, that have yet to be produced to Phoenix.  *See Mt. Hawley Ins. Co*., 2019 U.S. Dist. LEXIS 78839, at *6–7. Phoenix is entitled to discovery and to make a full submission regarding the facts related to the Policies and the Asbestos Exclusions.

## CONCLUSION

For all the foregoing reasons, Phoenix respectfully requests that the Court deny Plaintiff's motion for judgment on the pleadings.

Dated: April 26, 2024

FREEMAN MATHIS & GARY, LLP

/s/ *Philip W. Savrin*
Philip W. Savrin (Bar No. 627836)
Rachel Slimmon (Bar No. 831661)
100 Galleria Parkway, Suite 1600
Atlanta, GA 30339
(770) 818-1405
psavrin@fmglaw.com
rslimmon@fmglaw.com

SIMPSON THACHER & BARTLETT LLP

Lynn K. Neuner
Darcy R. Samuelsohn *(pro hac vice forthcoming)*
425 Lexington Avenue
New York, NY 10017
(212) 455-2000
lneuner@stblaw.com
darcy.samuelsohn@stblaw.com

*Counsel for Defendant The Phoenix Insurance Company*

**CERTIFICATE OF COMPLIANCE**

Pursuant to Local Rule 7.1(D), I hereby certify that the foregoing

**MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFF'S MOTION**

**FOR JUDGMENT ON THE PLEADINGS** has been prepared in Times New

Roman, 14-point type, in compliance with Local Rules 5.1(B) and (C).

Dated: April 26, 2024.

**FREEMAN   MATHIS   &   GARY,
LLP**

_/s/ Philip W. Savrin_
Philip W. Savrin
Georgia Bar No. 627826

100 Galleria Parkway, Suite 1600
Atlanta, GA 30339

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that the undersigned counsel electronically filed the foregoing with the Clerk of Court by using the CM/ECF system which will send a notice of electronic filing to all counsel of record, or U.S. mail if no email address has been provided.

This 26th day of April, 2024.

*/s/ Philip Savrin*
Philip W. Savrin
Georgia Bar No. 627836
psavrin@fmglaw.com

**FREEMAN MATHIS & GARY, LLP**
100 Galleria Parkway, Suite 1600
Atlanta, GA 30339-5948
(770) 818-0000 (telephone)
(770) 937-9960 (facsimile)